Christine R. **MONROTE**, Appellant,

v.

Theodore **BRITTON**, Deputy Commissioner, District of Columbia Compensation District, Bureau of Employees' Compensation; The Hecht Co., Appellees.

No. 12793.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 15, 1955.

Decided Jan. 30, 1956.

Mr. Francis W. McInerny, Washington, D. C., for appellant. Mr. Charles E. Channing, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. Ward E. Boote, Asst. Sol., U. S. Dept. of Labor, with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll, Asst. U. S. Atty., and Herbert P. Miller, Atty., U. S. Dept. of Labor, were on the brief, for appellee Theodore Britton.

Messrs. Richard W. Galiher, William E. Stewart, Jr., Julian H. Reis and William J. Donnelly, Jr., Washington, D. C., were on the brief for appellee The Hecht Co.

Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.

BAZELON, Circuit Judge.

The Deputy Commissioner of the Bureau of Employees' Compensation, District of Columbia Compensation District, determined that appellant's lower back injury arose out of and in the course of her employment, and allowed certain claims for disability.[1] He determined, however, that the employer was not liable for certain medical expenses because it had not "refused or neglected" to provide medical services within the meaning of § 7(a) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 907(a).[2] That section provides:

"The employer shall furnish such medical, surgical, and other attend-ance or treatment * * * for such period as the nature of the injury or the process of recovery may require. If the employer fails to provide the same, after request by the injured employee, such injured employee may do so at the expense of the employer. The employee shall not be entitled to recover any amount expended by him for such treatment or services unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same; nor shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within twenty days following the first treatment the physician giving such treatment furnish to the employer and the deputy commissioner a report of such injury and treatment, on a form prescribed by the Secretary. The deputy commissioner may, however, excuse the failure to furnish such report within twenty days when he finds it to be in the interest of justice to do so, and he may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee. * * *"

Appellant brought this suit to compel the Deputy Commissioner to issue a revised order holding the employer liable for these medical expenses.[3] The District Court granted appellees' motions for summary judgment and dismissed the suit. This appeal followed.

1. Because appellant still required treatment, the Deputy Commissioner postponed determination on whether appellant suffered any permanent disability.

2. 44 Stat. 1427 (1927), as amended, 48 Stat. 806 (1934), 52 Stat. 1165 (1938).

3. The amended complaint did not challenge the Deputy Commissioner's postponement of decision on the employee's claim for permanent disability compensation.

The pertinent facts are disclosed in the record of proceedings before the Deputy Commissioner. Immediately after the injury on March 23, 1953, appellant received emergency treatment from Dr. Marland, a staff physician in the clinic maintained by the department store employer. She was then sent home. Upon her arrival, she called her personal physician for further treatment. Subsequently she was in bed for four days and, upon the advice of her physician, did not go to work for three weeks. On several occasions thereafter, she received short-wave diathermy therapy and analgesics from Dr. Marland, who also ordered X-rays for which she did not appear. Appellant was dismissed by her employer on May 1, 1953. On May 20, 1953, during the course of treatment, Dr. Marland told her that she was entitled to further treatment and that he would continue to treat her even though her employment had been terminated. Although she requested no such treatment from June to August 1953, she continued to see her own physician "off and on" during that period.

According to appellant's testimony, the disputed medical expenses [4] were incurred under the following circumstances. On September 3, 1953, being in severe pain, appellant called the employer and requested that Dr. Marland come to her home. She was advised that he could not come since it was his day off. She then called Mr. King of the Deputy Commissioner's office which was handling her claim for disability compensation. She said: "Mr. King got in touch with Mr. Reis [an attorney who represented the employer in the contested claim proceedings], so Mr. Reis phones me back and tells me to go down to the Casualty Hospital because it was near-

by * *' *." She was admitted to the hospital that day by Dr. Angelo, acting for her personal physician, Dr. Canton, who was absent. The foregoing testimony was *not* contradicted.

Other evidence showed that Dr. Gallagher, a neurosurgeon, after consultation with appellant's personal physician, performed a myelogram on September 12, 1953, which revealed that appellant had a ruptured intervertebral disc. On the same date, appellant's counsel directed a letter to the employer, with copies to the Deputy Commissioner and appellant's personal physicians (Dr. Canton and Dr. Gallagher), advising that the myelogram showed the necessity for surgery which "will take place within the next few days." "This letter," it was added, "will serve to give notice that all medical and hospital expenses in connection with the surgery will be part of [appellant's] claim against [the employer]." After the date of this letter and before surgery was performed on September 24, 1953, Dr. Marland called Dr. Gallagher to discuss the case and direct attention to another injury which appellant sustained in September 1952, but said nothing about the matter of the employer's authorization of the surgical services. There was no other communication from any of the employer's representatives.

The Deputy Commissioner contends in this court that his determination must be sustained because the "record as a whole does not show that the circumstances specified in Section 7 for reimbursement, existed." [5] But his determination can be sustained only if there are adequate findings to support it. Vendemia v. Cristaldi, 1955, 95 U.S. App.D.C. 230, 221 F.2d 103, 106 (1955); Friend v. Britton, 95 U.S.App.D.C. 139, 220 F.2d 820, 821, certiorari denied,

---

4. The record does not clearly reflect the extent of the claim for medical treatment. Appellant's original claim apparently sought medical expenses incurred before September 3, 1953, as well as surgical and hospital expenses incurred after that date. On this appeal, however, only an award for the latter is urged, and our discussion therefore is to be understood as relating only to this portion of the claim.

5. Appellees' Brief, p. 4.

Alexander v. Friend, 1955, 350 U.S. 836, 76 S.Ct. 72. They are not adequate here.

The findings of fact fail to make explicit the basis for the statement that claimant's treatment by a physician of her own choice—which we assume refers to the period after September 3, 1953 [6]—was "without the employer's authorization." [7] They do not reflect, for example, what, if any, significance the Deputy Commissioner attributed to the employer's disclaimer of liability for treatment on the ground the injury was non-compensable, if in fact such disclaimer was communicated to appellant before surgical expenses were incurred.

There are no findings or conclusions with respect to appellant's uncontradicted testimony that the employer's attorney authorized her to enter the hospital. Nor is there any evidence that the Commissioner's decision took into account the September 12 letter in which appellant's attorney notified the employer that the expenses of the contemplated surgery would be included in appellant's claim. If the Deputy Commissioner disregarded appellant's uncontradicted testimony because he deemed it incredible, he was required to say so explicitly.[8] If he accorded it full weight but thought this testimony, together with the September 12 letter and the disclaimer of liability, was immaterial under § 7, the question arises whether he followed too literal a view of the statutory requirements for reimbursement.[9]

■ Judicial review of administrative action cannot rest upon a record which requires speculation upon these matters. Accordingly we reverse the District Court's order granting appellees' motions for summary judgment and remand the case with directions to set aside the Deputy Commissioner's action under attack here, and to afford him an opportunity to clarify these matters by supplementing the record.[10] The Deputy Commissioner may, in his discretion, reopen the record to receive additional evidence.

So ordered.

6. See note 4, supra.

7. Compensation Order, Sept. 15, 1954. All that appears in the findings of fact with respect to the disputed medical treatment is the following: "that the employer furnished the claimant with medical treatment, etc., in accordance with the provisions of section 97(a) [sic] of the Act; that the claimant accepted some treatment at the hands of the employer's physicians and secured other treatment and care of her own choice without the employer's authorization; that the employer is not liable for the cost of such unauthorized treatment and care."

8. Ennis v. O'Hearne, 4 Cir., 1955, 223 F. 2d 755, 758. Cf. Wimmer v. Hoage, 1937, 67 App.D.C. 128, 129, 90 F.2d 373, 374.

9. The following assertions in the Deputy Commissioner's brief in this court (pp. 12, 15) throw some light on his view of the statutory requirements: that § 7 "contemplates more directness and certainty"; that § 7 provides for reimbursement not "where the employer 'authorizes' the [outside] treatment [but] where the employer refuses or neglects to furnish treatment after request by the employee," etc.; and that the letter from appellant's attorney, instead of requesting treatment, merely " 'told' the employer" that the expenses of the contemplated surgery would be included in appellant's claim.

10. Cf. Vendemia v. Cristaldi, 1955, 95 U.S. App.D.C. 230, 221 F.2d 103.