**Willie Mae MITCHELL, etc., Appellant,**

v.

**Elmer D. WOODWORTH, also known as E. D. Woodworth, Deputy Commissioner District of Columbia, Compensation Bureau of Employees' Compensation, United States Department of Labor, et al.**

**No. 24052.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1970.

Decided July 6, 1971.

---

Mr. H. Clay Espey, Washington, D. C., with whom Mr. Charles B. De Shazo, Washington, D. C., was on the brief, for appellant.

Mr. George M. Lilly, Atty., U. S. Dept. of Labor, with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, Asst. U. S. Atty., and Alfred H. Myers, Atty., U. S. Dept. of Labor, were on the brief, for appellee Woodworth.

Mr. M. S. Mazzuchi, Washington, D. C., for appellees Steiner Construction Co., Inc. and Aetna Casualty & Surety Company.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant Willie Mae Mitchell is the widow of Herman Mitchell, a laborer who died of a cerebral vascular accident shortly after collapsing at work. She appeals from the District Court's affirmance of the Labor Department's denial of her claim for workman's compensation. *See* 33 U.S.C. § 921(b) (1964); 36 D.C. Code § 501 (Supp. IV 1971). We reverse.

The Deputy Commissioner who presided over the administrative hearing made the following findings of fact:

That on November 17, 1966, the employee [Herman Mitchell] who was 52 years of age and suffering from hypertension, reported to work for the employer * * * at approximately 7:00 a. m.; that he began work at 7:30 a. m and made no complaint to anyone that he was feeling ill; that on the said date the employee's work consisted of helping the brick masons; that the employee picked up masonry blocks weighing approximately twenty-five pounds in each hand and carried them a distance of about 25 feet to the brick masons; that at approximately 8:00 a. m., or shortly thereafter, he told * * * a co-worker that he was feeling ill and he sat down on the floor; that * * * the general superintend-

ent called an ambulance and the employee was taken to Casualty Hospital about 9:00 a. m. or 9:30 a. m., where he died on November 17, 1966 at approximately 8:25 p. m.; that the death of the employee was caused by cerebral vascular accident, secondary to intraventricular and intracerebral hemorrhage[.]

The Deputy Commissioner concluded that "the death of the employee * * * did not arise out of or in the course of the employment." It is this conclusion that Mrs. Mitchell attacks.

We recently dealt with a very similar situation, in Wheatley v. Adler, 132 U.S. App.D.C. 177, 407 F.2d 307 (1968) (*en banc*). We took note there of the "express statutory presumption [33 U.S.C. § 920(a) (1964)] that the 'claim comes within the provisions of [the Act].'" 132 U.S.App.D.C. at 182, 407 F.2d at 312. We then laid down the legal principle which controls this case:

> [T]he statutory presumption brings within the Act a death that results in the course of employment when a pre-existing internal disorder takes a sudden turn for the worse, unless the record contains substantial evidence as to the cause of the collapse which shows that it was not aggravated or precipitated by a work-related factor.

*Id.* Accordingly, the only question we face is "whether there is substantial evidence in the record to dispel the presumption." *Id.*

Three doctors testified at the hearing, two for the employer and one for Mrs. Mitchell. Appellees argue that the testimony of the employer's doctors constitutes substantial evidence which overcomes the presumption. Each of these doctors, after reading the hospital records and statements of co-workers, testified in response to a hypothetical set of facts that there was a reasonable medical probability that the death was not work-related. Neither doctor had ever seen Mr. Mitchell, and neither had any personal knowledge of his work. Based only on the facts presented to them, both doctors thought that Mr. Mitchell's death occurred "in the natural course" of his hypertension.

In other circumstances, this sort of expert testimony might be sufficient to overcome the presumption. But here the employer's doctors did not have all the relevant facts before them, and so their opinions were entitled to little or no weight. The hypothetical posed by the employer's attorney told the doctors only that Mr. Mitchell was performing "a usual laboring job" when he collapsed. And the statements of the co-workers filled out this barren description only by adding that for about a half-hour Mr. Mitchell had been carrying 25 pound blocks two at a time, a distance of 25 feet to some brick masons (see the Deputy Commissioner's findings of fact, *supra*). This was all the doctors knew, as they readily conceded. They did not know, as they also conceded, how fast Mr. Mitchell was working, or how many blocks he had handled, or how high he had to lift the blocks to the brick masons. Indeed, the record contains none of this information. Yet these facts were essential to a reliable expert opinion on the cause of Mr. Mitchell's death, for *every* doctor who testified agreed that if Mr. Mitchell had been strenuously exerting himself, his work could very well have precipitated his demise.

In short, the employer's doctors' opinions were valid only upon the assumption that Mr. Mitchell's work was not strenuous. But the meager set of facts developed by the employer made such an assumption wholly speculative. Therefore, these doctors' opinions do not constitute substantial evidence which dispels the workman's compensation act's presumption of coverage. Wheatley v. Adler, *supra*; *see generally, e. g.*, Jenkins v. United States, 113 U.S.App.D.C. 300, 303–304, 307 F.2d 637, 640–641 (1962) (*en banc*) and cases cited; Wigmore, Evidence §§ 672, 681 (3d ed. 1940).

Reversed.